Jones, J.
 

 We reject the proposition that under the doctrine of pre-emption our State courts must defer in this case to the exclusive competence of the National Labor Relations Board and thus are powerless to protect against the unlawful coercive activity designed by this union to erect an embargo on the flow of out-of-State goods into New York.
 

 The Appellate Division reversed the order of Special Term
 
 *271
 
 (which had denied plaintiffs motion for a preliminary injunction) on the law and in the exercise of discretion, and restrained defendants
 
 pendente lite
 
 from picketing and distributing written material aimed at discouraging purchases of ice cream manufactured outside, and sold within, New York State by Barclay’s. The case is before us on appeal from the nonfinal order of the Appellate Division by leave granted by that court on a certified question inquiring whether the order was properly made. In that posture it must be presumed that questions of fact—which defendants now contend exist—were resolved in plaintiffs favor (CPLR 5612, subd [b]). Our only inquiry is whether on the facts deemed to have been established the Appellate Division had power to grant the injunctive relief that it did; if that power existed we do not inquire into the propriety of its exercise (Cohen and Karger, Powers of the New York Court of Appeals [rev ed], p 378).
 

 Barclay’s is a New Jersey corporation engaged in the wholesale distribution of ice cream manufactured in Pennsylvania and Ohio to customers in New York and New Jersey. Local 757 represents employees engaged in the manufacture of ice cream in the New York City area. The employees of Barclay’s suppliers, as well as Barclay’s own employees, are represented by local unions affiliated with the same parent union as is Local 757. After the latter local had been unsuccessful in calling on Barclay’s to purchase all its ice cream from certain designated manufacturers within New York, the local made known its intention to conduct a consumer boycott by picketing retail stores where ice cream distributed by Barclay’s was sold and by handing out literature urging consumers not to buy Barclay’s products, which were described as having been manufactured outside New York "under sub-standard labor conditions”—a description found by the Appellate Division to be without basis in the record. Labor conditions existing at the manufacturing plants which supplied the ice cream distributed by Barclay’s were determined under collective bargaining agreements negotiated by the locals representing the employees at those plants. The sole objective of the Local 757 action as described by its secretary-treasurer was "to protect our members’ jobs”—i.e., by compelling Barclay’s to purchase locally produced ice cream rather than that manufactured in Pennsylvania and Ohio.
 

 For present purposes, accepting the facts averred by Barclay’s, as we must, it cannot be disputed that the union’s
 
 *272
 
 contemplated activities would constitute an unlawful restraint on trade under our State law and public policy
 
 (Mayer Bros. Poultry Farms v Meltzer,
 
 274 App Div 169). The remand to our State courts by the United States District Court for the Southern District of New York, following the union’s removal of this case to the Federal court, forecloses the contention that State court action is precluded because there is jurisdiction in the Federal courts. The critical question now is whether under the doctrine of pre-emption Barclay’s must look for relief to the National Labor Relations Board.
 

 We note that it does not suffice to negate such pre-emption merely to conclude that there is no "labor dispute” within the contemplation of section 807 of our State’s Labor Law. The issue is whether the activity of the local is "arguably” subject to the provisions of the Labor Management Relations Act, either by way of protection or prohibition
 
 (San Diego Unions v Garmon,
 
 359 US 236, 245;.
 
 Dooley v Anton,
 
 8 NY2d 91). Manifestly, it is not enough that Local 757 itself asserts that its conduct in this case comes within the National Labor Relations Board ambit or that in other factually similar cases other litigants may have advanced corresponding assertions. The resolution must turn on whether it may rationally be concluded that the conduct in question is activity conducted for the purpose and within the scope of recognized labor union objectives or whether it is conduct outside that scope although engaged in by the members of a labor union. If the activity is "’a merely peripheral concern of the Labor Management Relations Act’” the jurisdiction of the State to regulate the activity in furtherance of local feeling and responsibility remains undiminished
 
 (Linn v Plant Guard Workers,
 
 383 US 53, 59).
 

 Measured by these standards, we conclude that the consumer boycott planned by Local 757 in this instance falls outside the scope of the exclusive jurisdiction of the National Labor Relations Board. No legitimate objective of labor union activity is here involved. There is no question of interunion rivalry, nor of Barclay’s handling non-union-made ice cream. There is no issue of union representation or dispute over wages or conditions of employment with respect to either Barclay’s employees or the employees of the Pennsylvania and Ohio manufacturers of the ice cream that Barclay’s distributes. The sole objective and consequence of the intended consumer boycott is by means of coercive economic pressure to
 
 *273
 
 force Barclay’s to abandon its out-of-State suppliers and to turn exclusively to local sources. The imposition of such an embargo to promote the economic interest of members of the local union is an unlawful purpose contrary to the public policy of this State; as such it is not beyond the power of the courts to reach and to enjoin (cf.
 
 Linn v Plant Guard Workers,
 
 383 US 53, 59,
 
 supra).
 

 The narrow issue before us on this appeal is whether, as a matter of law, there was a legal barrier to the exercise by the Appellate Division of its authority to grant an injunction
 
 pendente lite.
 
 For the reasons stated we conclude that there is no such barrier.
 

 Accordingly, the order of the Appellate Division should be affirmed. We interpret the certified question as an inquiry as to whether the Appellate Division had the power to make the order that it did (Cohen and Karger, Powers of the New York Court of Appeals [rev ed], p 378, n 92). So interpreted the certified question should be answered in the affirmative.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
 

 Order affirmed, with costs. Question certified answered in the affirmative.